# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# STATESBORO DIVISION

WADE JAMES ODUM, )
)
    Movant, )
)
v. ) CV616-132
) CR615-008
UNITED STATES OF AMERICA, )
)
    Respondent. )

## **REPORT AND RECOMMENDATION**

Convicted as a felon in possession of firearms, doc. 31, Wade Odum invokes 28 U.S.C. § 2255 to vacate the restitution portion of his sentence. Doc. 36.[1] As part of his sentence this Court required restitution under the Mandatory Victims Restitution Act (MVRA). Doc. 31 at 5-6. Two Counts on which the indictment depended have since been vitiated by a state court's dismissal of supporting charges. *See* doc. 36-1 (certificate of service of dismissal by the Middle Judicial Circuit of Georgia District Attorney). Because Odum's failure to timely

---

[1] The Court is citing to the criminal docket in CR615-008 unless otherwise noted, and all page numbers are those imprinted by the Court's docketing software.

appeal his sentence within 14 days of judgment was through no fault of his own, and because he was precluded from seeking relief under 28 U.S.C. § 2255 or § 2241 (and thus falling under the statutes' one-year limitations periods), the Court ordered the Government to file a response. Doc. 37. Odum then filed a supplemental memorandum, arguing that the new rule announced in *Johnson v. United States*, 576 U.S. __, 135 S. Ct. 2551 (2015), and made retroactive by *Welch v. United States*, 578 U.S. __, 136 S. Ct. 1257 (2016), neutralizes the 210-month enhanced sentenced he received for possession of a firearm as a career felon and that his counsel was ineffective for failing to so argue. *See* doc. 38. The Government opposes his motion. Doc. 39.

I. BACKGROUND

On November 16, 2015, Odum pled guilty to one count of possession of a firearm by a convicted felon. *See* docs. 28 (change of plea); 31 (judgment, entered February 29, 2016). His Presentence Investigation Report (PSR) deemed him an armed career criminal, based on numerous prior convictions, including 20 State of Georgia burglary convictions. PSR ¶¶ 51, 60-63, 65. The Court sentenced him to 210 months' imprisonment. Doc. 31.

## II. ANALYSIS

### A. The *Johnson* Decision

The ACCA provides enhanced penalties for defendants who are (1) convicted of being felons in possession of firearms in violation of 18 U.S.C. § 922(g), and (2) have "three prior convictions . . . for a violent felony or a serious drug offense, or both." 18 U.S.C. § 924(e)(1). Plain vanilla, felon-in-possession convictions fetch a maximum 10 year sentence, *see* 18 U.S.C. § 922(a)(2), while the ACCA enhancement mandates a 15 year minimum (and a maximum of life). 18 U.S.C. § 924(e)(1).

The ACCA defines "violent felony" as, among other things, a felony that "otherwise involves conduct that presents a serious potential risk of physical injury to another." *Id.* at § 924(e)(2)(B). *Johnson* held that that "residual clause" violated due process. *See* 135 S. Ct. 2551, 2557. It said nothing, however, about ACCA enhancements predicated on convictions for "serious drug offenses" or "violent felonies" classed as such under ACCA provisions other than the residual clause. *See, e.g.*, *Johnson*, 135 S. Ct. at 2563 ("Today's decision does not call into question application of the Act to the four enumerated offenses, or the

3

remainder of the Act's definition of a violent felony," much less its definition of "serious drug offense"). After *Johnson*, enhancements based on those offenses remain valid. *See United States v. Tinker*, 618 F. App'x 635, 637 (11th Cir. 2015) (convictions that qualify as violent felonies under the "elements" clause of the ACCA rather than the "residual" clause survive *Johnson*).

As the PSR makes clear, Odum's enhancement is based on "violent felonies" as the ACCA continues to define that term post-*Johnson*.[2] *See*

---

[2] To determine whether a crime qualifies under the ACCA, "a court must follow a categorical approach in which it looks 'only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions.'" *United States v. Brown*, 379 F. App'x 872, 874 (11th Cir. 2010) (quoting *Taylor v. United States*, 495 U.S. 575, 600 (1990)). The sentencing judge thus must compare the elements of the defendant's prior conviction with the elements of the "generic" ACCA crime. *Taylor*, 495 U.S. at 599. By "generic crime," the *Taylor* Court meant "the generic sense in which the term is now used in the criminal codes of most States." *Id.* at 598; *United States v. Haney*, __ F.3d __, 2016 WL 6298695 at * 1 (7th Cir. Oct. 27, 2016).

If the elements of the defendant's prior offense are *broader* than those of the generic crime, then the prior conviction cannot count as an ACCA predicate offense. But if those elements match (or are narrower) than the generic offense's elements, that conviction "categorically" qualifies as an ACCA offense." *See King v. United States*, __ F.Supp.3d __, 2016 WL 4487785 at *4 (S.D. Fla. Aug. 24, 2016). Where the

> prior offense does not categorically qualify as a predicate offense under the ACCA because the offense of conviction is broader than the generic crime, *Taylor* explained that the sentencing court may go beyond the elements of the offense and look to whether "the charging paper and jury instructions actually required the jury to find all the elements of [the generic crime] in order to convict the defendant." 495 U.S. at 602, 110 S. Ct. 2143. This later became known as the "modified categorical approach," which the Supreme Court expanded in *Shepard* [*v. United States*, 544 U.S. 13, 26 (2005)].

4

*Id.* at * 5. Then, to determine the statutory basis for conviction, a court may consult certain "*Shepard*" documents such as charging documents, plea agreements, transcripts of plea colloquies, jury instructions, and verdict forms. *Johnson*, 559 U.S. at 144. Undisputed facts contained in a Presentence Investigative Report may also be used in determining the statutory basis for conviction. *In re Hires*, 825 F.3d 1297, 1302 (11th Cir. June 15, 2016) (citing *United States v. McCloud*, 818 F.3d 591, 595, 599 (11th Cir. 2016)); *United States v. Ramirez-Flores*, 743 F.3d 816, 820 (11th Cir. 2014); *United States v. Wade*, 458 F.3d 1273, 1277-78 (11th Cir. 2006).

Finally, courts use the modified categorical approach only when the statute of conviction contains "divisible" elements requiring a jury to make a finding in the alternative. *Descamps v. United States*, 133 S. Ct. 2276, 2285 (2013). Hence, the modified categorical approach does not apply to an overbroad statute, but only to a statute that defines the crime *alternatively* with "one statutory phrase corresponding to the generic crime and another not." *Id.* at 2286. This distinction between "divisible" and "non-divisible" statutes is critical when determining whether a defendant's prior convictions may now qualify under the ACCA. *King*, 2016 WL 4487785 at *5. Also, "the modified categorical approach does not apply when the statute lists "diverse means of satisfying a single element of a single crime -- or otherwise said, spells out various factual ways of committing some component of the offense." *Id.* (quoting *Mathis v. United States*, __ U.S. __, 136 S. Ct. 2243, 2249 (2016)).

Odum's burglary convictions under Georgia's divisible burglary statute qualify as "generic burglary" under the ACCA. "[T]he generic, contemporary meaning of burglary contains at least the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." *Taylor*, 495 U.S. at 598. At the time movant was convicted of his burglaries, Georgia law defined the offense of burglary as follows:

> A person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another or any building, vehicle, railroad car, watercraft, or other such structure designed for use as the dwelling of another or enters or remains within any other building, railroad car, aircraft, or any room or any part thereof.

O.C.G.A. § 16-7-1 (version in effect from 1980-2012). "This statute is non-generic because it encompasses unlawful entry into vehicles, railroad cars, watercraft, and aircraft" but "is also divisible, . . . because it sets out alternative ways to commit the crime, including the unauthorized entry into buildings, structures, vehicles, railroad cars, and watercraft." *Fail v. United States*, 2016 WL 1658594 at *3 (S.D. Ga. Mar. 23, 2016), *adopted*, 2016 WL 1688778 (S.D. Ga. Apr. 26, 2016); *see also Descamps*, 133 S. Ct. at 2281; *Redfern v. State*, 246 Ga. App. 572, 574 (2000) (stating government must prove defendant unlawfully entered a "building"). Conviction

5

PSR ¶¶ 57, 58, 59, 71 (state court convictions for 15 burglaries of dwellings); *see also* doc. 39 at Exhs. B, C, D, E (charging documents, guilty pleas, and final dispositions for same). Burglaries of residences qualify as predicate offenses under the enumerated offenses clause, not the residual clause. *Fail*, 2016 WL 1658594 at * 3-4 (analyzing Georgia's burglary statute under *Descamps*, 133 S. Ct. at 2281, and concluding that residential burglaries qualify as ACCA predicates under the enumerated clause); *Jones*, 2016 WL 4097786 at *2 (same); *Mathis*, 136 S. Ct. 2248 ("generic" burglary involves "an unlawful or unprivileged entry into . . . a building or other structure, with intent to commit a crime.").

Odum's burglary convictions reflect that he was charged with the "generic" versions of burglary involving "an unlawful or unprivileged entry into . . . a building or other structure, with intent to commit a crime." *Mathis*, 136 S. Ct. at 2248. *See* doc. 39 at Exhs. B at 4-7 (charging that at four separate dwellings, he "entered the dwelling of

---

under the "generic" portion of the statute, therefore, qualifies as an ACCA predicate. *See also McClouden v. United States*, 2016 WL 5109530 (11th Cir. Sept. 20, 2016) (noting that Georgia's broad burglary statute may no longer qualify as an ACCA predicate offense, following *Mathis v. United States*, 2016 WL 3434400 (U.S. June 23, 2016), but making no finding as to whether it can be analyzed under *Descamps* and found to be an ACCA predicate offense).

6

[another]" "without authority and with intent to commit a theft therein"); C at 3-4 (charging that at two separate dwellings, he "unlawfully without authority and with intent to commit a theft therein, enter[ed] the dwelling house of another"); D at 4-6 (charging that at six separate dwellings, he "unlawfully without authority and with the intent to commit a theft therein, entered the dwelling house of another"); E at 3-4 (charging that at three separate dwellings, he "unlawfully, without authority, and with the intent to commit a theft therein, enter[ed] the dwelling house of another"); PSR ¶¶ 51, 58, 59, 71. Because these four residential burglary convictions[3] remain enumerated offenses triggering an ACCA enhancement, *see* 18 U.S.C. §§ 924(e)(1) & (2)(B), *Mathis*, 136 S. Ct. at 2248, *Johnson* has no impact on the validity of his sentence.[4]

---

[3] These are not Odum's only burglary convictions. He had additional burglary convictions out of the States of Georgia and Florida that were *not* considered because "the sentencing document for those convictions was not available." PSR ¶¶ 27, 51-52, 56, 60-63, 69-70.

[4] Counsel's failure to argue to the contrary therefore was not ineffective assistance. Doc. 38 at 3-4 (arguing that counsel was ineffective because he "should have known and argued" that *Johnson* applied to his case). *See Rivers v. United States*, 2016 WL 2646647 at * 4 (S.D. Ga. May 9, 2016) (failure to contest meritless issues is not ineffective assistance) (citing *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992)).

7

B.  Restitution

As previously noted, doc. 37, a federal prisoner cannot utilize § 2255 to challenge the restitution portion of his sentence. *Blaik v. United States*, 161 F.3d 1341, 1342-43 (11th Cir. 1998) (a restitution reduction is an action "not authorized by the plain language of the statute" because it does not constitute a release from custody). Even if Odum had drummed up a cognizable *Johnson* or ineffective assistance of counsel claim, he still would not be able to bootstrap a restitution recalculation claim into his § 2255 motion. *Mamone v. United States*, 559 F.3d 1209, 1210-11 (11th Cir. 2009) (a prisoner cannot challenge restitution in a § 2255 motion *even if* cognizable § 2255 claims seeking release from custody are also raised); *United States v. Thiele*, 314 F.3d 399, 402 (9th Cir. 2002) ("[n]on-cognizable claims do not morph into cognizable ones by osmosis.").[5]

---

[5] Odum was ordered to pay restitution under the MVRA. Doc. 31. The MVRA, an amendment to the Victim and Witness Protection Act (VWPA), 18 U.S.C. § 3663(a), provides that "the court shall order, in addition to . . . any other penalty authorized by law, that the defendant make restitution." 18 U.S.C. § 3664A(a)(1). Restitution is a "criminal penalty meant to have strong deterrent and rehabilitative effect." *United States v. Twitty*, 107 F.3d 1482, 1493 n. 12 (11th Cir. 1997) (construing purpose of restitution under the VWPA) (quoting *United States v. Hairston*, 888 F.2d 1349, 1355 (11th Cir. 1989)). It is not necessarily limited to a single Count in an indictment, because the purpose is to punish a defendant's *overall* criminal activity. *United States v. Siegel*, 153 F.3d 1256, 1259 (11th Cir. 1998) (the MVRA has "not only

To the extent Odum challenges the Federal Bureau of Prison's (BOP) collection of restitution, modification of fine repayments is

---

remedial, but also deterrent, rehabilitative, and retributive purposes.").

Odum pled guilty to Count One of the indictment (for possession of a Winchester rifle as a felon), in exchange for the Government's dismissal of Counts Two through Six (for stealing and possessing twenty other firearms from the residence of "D.B."). *See* PSR ¶ 7; Doc. 28 (plea agreement). His plea agreement informed him that he would be required to pay restitution for his "total criminal conduct," notwithstanding the dismissal of any related charges. Doc. 28 at ¶ 7. *See also* 18 U.S.C. § 3663(a)(3) (district court may order restitution for *non-convicted conduct* based on a defendant's plea agreement). The dismissed state court case relates to Counts Two and Five of the indictment, for which Odum was *not* here convicted. *See* doc. 39.

It is unclear from the pleadings whether the state court action was a criminal or civil case. If a criminal case, dismissal of the state court case is inapposite to the federal case, because the ability of the State to bring criminal charges under *state* law does not have any bearing on the Government's related criminal charges under *federal* law. *See e.g., United States v. Trammell*, 133 F.3d 1343, 1350 (10th Cir. 1998) ("prosecutions undertaken by separate sovereign governments, no matter how similar they may be in character . . . cannot be for the same offense" because the "laws of separate sovereigns are indeed separate and [ ] one act may violate the laws of each[.]") (internal quotes and cites omitted).

If it's a civil case, restitution to the victim(s) may be still imposed after dismissal of the state civil case because "[r]estitution is not a civil matter; it is a criminal penalty meant to have a strong deterrent and rehabilitative effect." *Hairston*, 888 F.2d at 1355. "The issue at sentencing is whether the penal purposes of the VWPA are furthered by ordering restitution," and that issue "was not and could not have been litigated in the civil case." *Id.* Any settlement between the defendant and the victim, however, should be considered by the trial court in forming the restitution order. *Id.* If settlement of the state court case -- made after the plea agreement was reached -- affects the calculation of restitution, Odum *may* have a case for relief under 28 U.S.C. § 2241. *But see United States v. MacArthur*, 510 F. App'x 802, 803 (district courts lack the inherent authority to modify a sentence outside of the specific parameters provided by statute and the Federal Rules of Criminal Procedure); *Carlisle v. United States*, 517 U.S. 416, 426 (1996) (whatever the scope of a district court's inherent power, it does not include the power to develop rules that circumvent or conflict with the Federal Rules of Criminal Procedure or statutory provisions).

9

available pursuant to 18 U.S.C. § 3572(d)(3) (providing for adjustments of the payment schedule where a defendant's "economic circumstances" change). He has not, however, shown any material change in his economic circumstances from when he was sentenced. *See* docs. 36 & 38; 31 at 6 (judgement ordering "quarterly installments of a minimum of $25 if working non-UNICOR or a minimum of 50 percent of monthly earnings if working UNICOR" should go to paying the fine).[6]

## III. CONCLUSION

In sum, Odum's conviction and sentence were proper and his § 2255 motion should be **DENIED**. This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.

---

[6] To the extent Odum seeks to challenge the BOP's *mechanism* for collecting fines from him under the Inmate Financial Responsibility Program (IFRP), such a challenge to the execution of his sentence may be brought in a 28 U.S.C. § 2241 motion. *See United States v. Kinsey*, 393 F. App'x 663, 663-64 (11th Cir. 2010); *Williams v. Pearson*, 197 F. App'x 876 (11th Cir. 2006). Such a motion must, however, be filed in the district of his confinement (North Carolina) and must demonstrate exhaustion of his administrative remedies. *Fleming v. Warden of FCI Tallahassee*, 631 F. App'x 840, 842-43 (11th Cir. 2015) (though exhaustion of administrative remedies in not jurisdictional, it is still required to prevail on the merits and may be offered as an affirmative defense); *Santiago-Lugo v. Warden*, 785 F.3d 467, 475 (11th Cir. 2015) (same). *See also Irwin v. Hawk*, 40 F.3d 347, 349 n. 2 (11th Cir. 1994) (detailing the BOP's administrative remedy procedures and requiring a prisoner to exhaust his claim administratively when seeking injunctive relief).

10

Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. U.S.*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED,** this <u>10th</u> day of November, 2016.

> /s/ G.R. Smith
> UNITED STATES MAGISTRATE JUDGE
> SOUTHERN DISTRICT OF GEORGIA